# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONNA LAIRD**

**CIVIL ACTION**

**v.**

**NO. 16-707-JWD-RLB**

**STATE FARM FIRE AND CASUALTY COMPANY, ET AL.**

## RULING AND ORDER

### I.      Introduction

This matter comes before the Court on the Motion to Dismiss filed by Defendants Detective Patti Freeman ("Freeman") and Sid Gautreaux ("Gautreaux" and collectively, "Defendants"), in his official capacity as the Sheriff of the East Baton Rouge Parish. (**Doc. 16.**) Plaintiff Donna Laird ("Plaintiff") has filed an opposition. (**Doc. 21.**) Defendants filed a reply (**Doc. 23.**) Oral argument is not necessary. For the reasons that follow, Defendants' motion is **DENIED IN PART** and **GRANTED IN PART**.

### II.      Factual Background

On or about September 16, 2016, Plaintiff initiated suit in the 19th Judicial District Court for the Parish of East Baton Rouge bearing Civil Action No. 651509, Section 27, naming as defendants State Farm Fire and Casualty Company, State Farm Life Insurance Company, and State Farm Mutual Automobile Insurance Company (collectively, "State Farm"), State Farm agent Stan Douglas ("Douglas"), Plaintiff's half-brother Michael Rojas ("Rojas"), Freeman and Gautreaux in his official capacity as Sheriff of East Baton Rouge Parish.[1] (Docs. 1 at 3—4, 1-2 at 5—6.) In her Petition, Plaintiff alleged, inter alia, that Douglas, Rojas, and Freeman "conspired

---

[1] It is unclear from the petition whether Plaintiff sued Freeman and Gautreaux in both their individual and official capacities. In any event, the Court's conclusion remains the same regardless of whether they were sued in their individual or official capacities.

to intentionally, recklessly, and/or unreasonably, deprive plaintiff of her well-established right to be free from malicious prosecution and unreasonable seizure, guaranteed by Louisiana law and by the First, Fourth, and Fourteenth Amendments to the United States Constitution." (Doc. 1-2 at 6.)

Plaintiff is the daughter of Gloria Garside ("Garside"). (*Id.* at 7.) In 2010, Plaintiff moved into Garside's home to help take care of her and manage her personal and financial affairs. (*Id.*) On October 15, 2013, and again on March 25, 2014, Garside executed a Power of Attorney granting Plaintiff full authority over all of Garside's affairs. (*Id.* at 8.)

Rojas is Plaintiff's half-brother and Garside's son. (*Id.* at 7) According to Plaintiff, Rojas has physically attacked her, once in 2011 and again in 2012. (*Id.*) She alleges that at all relevant times, she and Garside lived in fear of Rojas. (*Id.*)

Douglas is a State Farm agent and acquaintance of Garside's. (*Id.*) He sold Garside insurance policies and retirement/investment instruments issued by State Farm. (*Id.*) At all relevant times, Douglas had a key to Garside's home, and would occasionally stop by and give her medication. (*Id.*) In 2012, Plaintiff contacted Douglas to complain that he was overmedicating Garside. (*Id.* at 8.) Garside had been exhibiting signs of mental decline, and much to Plaintiff's chagrin, Douglas allegedly encouraged Garside to believe she was fine and did not require medical care. (*Id.* at 7—8.) Plaintiff vehemently disagreed with Douglas on this point, and implored him to refrain from involvement in Garside's affairs. (*Id.*)

In February 2014, Garside's neurologist diagnosed her with early stages of dementia, but found that she was still capable of making financial decisions and competent to sign legal instruments. (*Id.* at 8.) By March 2014, Garside began wandering away from her home and locking herself out of the house. (*Id.*) In an effort to protect Garside from wandering the streets

as a result of her dementia, Plaintiff had the locks changed at Garside's house in March or April 2014. (*Id.*) On the morning of April 17, 2014, Douglas arrived at Garside's home and threatened Plaintiff that he would call Rojas and instruct Rojas to report Plaintiff to Adult Protective Services because Plaintiff was falsely imprisoning Garside. (*Id.*) On that same date, Plaintiff called Adult Protective Services, Alzheimer's Services of the Capital Area, and the Capital Area on Aging to seek advice on how to best care for her mother. (*Id.* at 9.) All three agencies confirmed that Plaintiff was acting in Garside's best interest and properly caring for her. (*Id.*)

Plaintiff also called State Farm to complain about Douglas's conduct and his persistent meddling into her mother's affairs. (*Id.*) In turn, Douglas began to retaliate against Plaintiff. He informed Rojas that Garside was planning to sell her house and purchase a new home with Plaintiff, which Rojas was adamantly against. (*Id.*) Plaintiff alleges that Douglas and Rojas worked in concert "to remove [her] from Garside's home, put Rojas in charge of Garside's affairs, and allow Douglas and State Farm to exercise control over Garside's retirement funds." (*Id.*)

On May 5, 2014, Freeman allegedly called Plaintiff and advised her that she would be arresting her for the false imprisonment of Garside. (*Id.*) The following day, a neighbor informed Plaintiff that Douglas was changing the locks on Garside's home; Plaintiff had to call a locksmith to get back into the house. (*Id.*) Plaintiff further alleges that Douglas was following her in his car, and that she once again complained to State Farm about Douglas's behavior, but State Farm did nothing in response. (*Id.*)

On May 10, 2014, Plaintiff was served with a protective order forcing her to leave Garside's home. (*Id.* at 10.) On May 29, 2014, Freeman arrested and seized Plaintiff. (*Id.*) Plaintiff claims that prior to arresting Plaintiff, Freeman did not review the Powers of Attorney,

Garside's medical records, or any documentation from Alzheimer's services; she simply arrested Plaintiff pursuant to the desires of the complaining witnesses Douglas and Rojas. (*Id.*) On July 2, 2014, Plaintiff appeared in court to contest the protective order, and Freeman arrived at the courthouse "and again arrested and seized [Plaintiff], impairing [her] right to contest the order." (*Id.*) Ultimately, Plaintiff was charged with second degree battery, false imprisonment, crimes of violence against a victim 65 years-old or older, cruelty to the infirmed, exploitation of the infirmed, and unauthorized use of a motor vehicle. (*Id.*) Following Plaintiff's arrest, Rojas had Garside interdicted and sent to a nursing home and moved into her house. (*Id.*) On February 16, 2016, the district attorney dismissed all charges against Plaintiff; a trial was never held in the matter. (*Id.*)

On October 20, 2016, State Farm removed this action from the 19th Judicial District Court, alleging this Court had jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331, 1337, 1441, 1446, and 15 U.S.C. § 4. (Doc. 1 at 3.)

### III. Discussion

#### a. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. at 346—47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal

relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct.1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 555 U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 555 U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

### b. Parties Arguments

#### i. Defendants' Motion to Dismiss (Doc. 16)

Defendants argue that even accepting all factual allegations contained in Plaintiff's complaint as true, it still fails to state a claim against Freeman and Geautraux upon which relief can be granted. (Doc. 16-1 at 4.) In support of this contention, Defendants argue the following: that Plaintiff's false arrest and certain conspiracy claims have prescribed and that Plaintiff has failed to state a claim with regard to the remaining federal and state law claims asserted against Defendants. (*Id.*) Thus, Defendants argue that dismissal is appropriate here.

Defendants first argue that Plaintiff's false arrest claims against them under both state and federal law have prescribed and should be dismissed with prejudice. (*Id.* at 5.) Citing Plaintiff's allegation that she was unlawfully arrested on May 29, 2014, and again on July 2, 2014, Defendants argue these claims are untimely. (*Id.*) Noting that Louisiana's prescriptive period applies to delictual actions brought under Section 1983 and federal law determines when the cause of action accrues, Defendants argue that her claims for false arrest accrued, at the latest, on July 2, 2014 (the date of her second arrest), and prescribed one year later, on July 2, 2015. (*Id.* at 5—6.) Because Plaintiff did not file suit until September of 2016, Defendants argue her false arrest claims levied against them have prescribed and should be dismissed with prejudice. (*Id.* at 6.)

Similarly, Defendants argue that Plaintiff's federal and state law conspiracy claims that arise out of actions that occurred before September 16, 2016 are also time barred. (*Id.*) Plaintiff alleged that Freeman conspired with Rojas and Douglas to have her arrested on May 29, 2014 and July 2, 2014, in violation of 28 U.S.C. §1985 and Louisiana law; however, Section 1985 does not specify a statute of limitations, thus the Court must look to the state law prescriptive period. (*Id.* at 7.) Like the claim of false arrest, conspiracy is also considered a delictual action under Louisiana law and is subject to a one-year prescriptive period. (*Id.*) Defendants argue that

to the extent Plaintiff's conspiracy claim arises out of her alleged false arrest, it has also prescribed. (*Id.*)

Defendants further claim that any remaining federal claims under Sections 1983 and 1985 must also be dismissed, as they fail to state a claim upon which relief can be granted. (*Id.*) Specifically, they argue that any alleged "malicious prosecution" claim against them "fails to state a cognizable federal claim and should be dismissed." (*Id.* at 8.) Plaintiff alleges that Defendants (Freeman directly and Gautreaux via vicarious liability) violated her right to be free from malicious prosecution; Defendants argue the United States Constitution does not recognize a freestanding right to be free from malicious prosecution. (*Id.*) Accordingly, they insist any malicious prosecution claims brought by Plaintiff must necessarily be dismissed. (*Id.*)

Defendants also argue that Plaintiff's conspiracy claim under Section 1985 asserted against them in their official capacities must be dismissed. (*Id.*) Although Plaintiff did not specify whether she was suing Freeman in her official or individual capacity, Defendants proceed under the assumption that she sued Freeman in both capacities. (*Id.*) According to Defendants, "[m]unicipal liability for conspiracy under § 1985, among other things, requires a showing of 'class-based, invidiously discriminatory animus behind the conspirator's action.'" (*Id.* at 9 (citing *Aly v. City of Lake Jackson*, 605 Fed.Appx. 260, 263 (5th Cir. 2015)(citing *Moffit v. Bryant*, 751 F.3d 323, 326 (5th Cir. 2014)).) Because Plaintiff's allegations are void of any indication that Defendants "engaged in conspiratorial conduct motivated by racial animus", all of Plaintiff's Section 1985 claims must be dismissed. *(Id.)* In this same vein, Defendants contend that Plaintiff has failed to state a Section 1985 claim against Freeman in her individual capacity because she has failed to demonstrate a racial animus that motivated Freeman's actions. (*Id.*)

With regard to Plaintiff's remaining state law claims, Defendants allege that Plaintiff has failed to state a claim upon which relief can be granted in connection with the following claims: 1) state law civil conspiracy to commit malicious prosecution; 2) state law malicious prosecution; 3) violations under La. Civ. Code arts. 2315, 2016, and 2317; and 4) vicarious liability under the concept of *respondeat superior*, as codified by La. Civ. Code. arts. 2320. First, with regard to the conspiracy to commit malicious prosecution claim, Freeman argues that to succeed on such a claim under La. Civ. Code art. 2324, "[t]he actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury." (*Id.* (quoting *Rhyce v. Martin,* 173 F.Supp.2d 521, 535 (E.D.La. 2001) (internal quotation marks omitted).) Freeman asserts that Plaintiff has failed to state a claim against her because she has failed to demonstrate that there was a conspiratorial agreement in place between Freeman, Douglas, and Rojas, for which the object was to maliciously prosecute Plaintiff. (*Id.* at 10—11.) Freeman further alleges that Plaintiff's petition is wholly devoid "of any factual support for the proposition that such an agreement by and between Det. Freeman, Michael Rojas and Stan Douglas existed." (*Id.* at 11.)

In a related argument, Freeman alleges that Plaintiff's claim of malicious prosecution must also be dismissed, as Plaintiff has failed to allege facts beyond a speculative and conclusory level. (*Id.* at 11—12.) Freeman argues the only facts Plaintiff alleged that rise beyond a conclusory level are that 1) Freeman falsely arrested Plaintiff and 2) that the charges were later dismissed by the district attorney. (*Id.* at 12.) Freeman notes that to succeed on a malicious prosecution claim, Plaintiff must prove the following six elements: 1) the commencement or continuance of an original criminal or civil judicial proceeding; 2) its legal causation by the present defendant against the plaintiff who was the defendant in the original proceeding; 3) its

bona fide termination in favor of the present plaintiff; 4) the absence of probable cause for such proceeding; 5) the presence of malice therein; and 6) damage conforming to legal standards resulting to plaintiff. (*Id.* at 11—12 (quoting *Kennedy v. Sheriff of East Baton Rouge,* 935 So. 2d 669, 690 n.20 (La. 2006)(citation omitted)).) Freeman insists that Plaintiff is unable to satisfy the third element of her prima facie case because she cannot show that the criminal prosecution resulted in a bona fide termination in her favor. (*Id.* at 12.) She argues that jurisprudence requires that the criminal proceeding be brought to a conclusion on the merits, and that dismissal of charges by the district attorney is insufficient to satisfy this prong. (*Id.* (citing *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009); *Savoie v. Rubin,* 820 So.2d 486 (La. 2002)).)

Referencing Plaintiff's claims in her petition arising out of La. Civ. Code arts. 2315, 2016, and 2317, Defendants allege that Plaintiff has failed to state a claim against them arising out of these codal articles. (*Id.* at 13.) They further argue that any claims Plaintiff has attempted to state against them grounded in these articles are conclusory in nature and cannot withstand a motion to dismiss. (*Id.*)

Finally, Defendants address the issue of vicarious liability for Gautreaux's liability for Freeman's actions through the doctrine of *respondeat superior*, as codified by La. Civ. Code art. 2320. (*Id.*) Noting that the only claims against Gautreaux arise out of Freeman's actions, and arguing that all claims against Freeman should be dismissed, Gautreaux argues that the pendent vicarious liability claims levied against him must also necessarily be dismissed. (*Id.* at 13—14.)

## ii. Plaintiff's Opposition (Doc. 21)

Plaintiff insists that she has stated legally cognizable claims for malicious prosecution under both federal and state law. (Doc. 21 at 1.) She argues that Defendants rely on "old and discredited law" in support of their contention that Plaintiff must demonstrate more than

dismissal of the charges against her to establish a bona fide termination of the criminal prosecution in her favor. (*Id.* at 2.) Plaintiff cites *Lemoine v. Wolfe*, 14-1546 (La. 3/17/15), 168 So. 3d 362 to substantiate her allegation "that a nolle prosequi constitutes a bona fide termination of prosecution in favor of a malicious prosecution plaintiff." (*Id.* at 2—3.) She notes that the *Lemoine* opinion was the Louisiana Supreme Court's response to a certified question from the U.S. Fifth Circuit, and makes clear that the jurisprudence upon which Defendants rely was expressly rejected by the Court and is inapplicable here. (*Id.* at 3.) Further, Plaintiff argues that with regard to the fourth and fifth elements of her prima facie case (i.e. the absence of probable cause and malice), "if the charges are dismissed before trial – as they were in this case – a presumption arises that the defendant acted both without probable cause and with malice. (*Id.* (citing *Watson v. Church's Fried Chicken, Inc.*, 527 So. 2d 979, 981 (La. App. 4 Cir. 1988), *writ denied*, 532 So. 2d 135 (La. 1988)).) Plaintiff argues that in such cases, "the burden shifts to the defendant to prove both the presence of probable cause and the lack of malice." (*Id.* (citing *Ballard v. Mook*, 550 So. 2d 1208, 1212 (La. App. 4 Cir. 1989), *writ denied*, 556 So. 2d 1283 (La. 1990)).)

Next, Plaintiff insists that she has stated "a 'malicious prosecution'-type claim under § 1983." (*Id.* at 4.) She concedes that Defendants are correct in their assertion that the Constitution does not provide a freestanding right to be free from malicious prosecution, however she maintains that "there is a malicious-prosecution-like cause of action cognizable under § 1983 when based upon rights secured by federal law. [Plaintiff] has pleaded such a cause of action in this case." (*Id.*) Plaintiff cites *Albright v. Oliver*, 510 U.S. 266, 271, 290 (1994), a plurality opinion that she asserts stands for the proposition "that when someone who has been detained without probable cause brings a malicious prosecution claim, the Fourth Amendment provides a

basis for the claim. (*Id.* at 4—5.) Accordingly, federal appellate courts recognize that the Fourth Amendment provides a constitutional basis for a Section 1983 claim arising out of a malicious prosecution that resulted in the deprivation of constitutionally protected rights. (*Id.* at 5.) Fifth Circuit jurisprudence is consistent with this notion: while it has held that a claim of malicious prosecution is not "independently cognizable" under Section 1983, it explained that such claim must be couched in a denial of rights secured under federal—and not state—law. (*Id.* (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003)).)

Plaintiff explains that her petition "states specific violations of federal law, including the Fourth Amendment and the Fourteenth Amendment's guarantee of procedural – not substantive – due process: [Plaintiff] alleges that Freeman arrested and seized her after [Plaintiff] was served with a protective order forcing her to leave her mother's home." She alleges Freeman again violated her rights under federal law when Freeman arrested her for the second time while at the hearing to contest the protective order secured by Rojas, thereby impeding Plaintiff's right to contest the order. (*Id.* at 6—7.)

Next, Plaintiff avers that her malicious prosecution claim did not accrue until February 16, 2016, the date the district attorney dismissed the charges against her. (*Id.* at 7, 8 (citing *Murray v. Town of Mansura*, 06-355 (La. App. 3 Cir. 9/27/06), 940 So. 2d 832, 838, *writ denied*, 949 So. 2d 419 (La. 2007), *cert. denied*, 128 S.Ct. 270 (2007)).) She clarifies that she was never making a claim of false arrest, so the date upon which she was arrested is wholly irrelevant to the analysis. (*Id.*) Unlike a claim of false arrest, which requires a showing of unlawful detention without legal process, the linchpin of a malicious prosecution claim is not the absence of legal process, but rather the "*wrongful institution* of legal process." (*Id.* at 7—8 (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)) (emphasis original).) Because Plaintiff filed suit exactly seven

months after the prosecution dismissed the criminal charges against her, she insists her suit is timely as a matter of law. (*Id.* at 8.)

Finally, Plaintiff maintains that Freeman is liable for conspiracy under federal and state law. As she explains, Article 2324, which provides in relevant part that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person for the damage caused by such act[]", does not, in and of itself, impose liability for civil conspiracy because the "actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit *in whole or in part*." (*Id.* at 9 (quoting *Currier v. Entergy Services*, Inc., 2014 WL 4450360, *2 (E.D. La. 2014) (citations omitted; emphasis in original)).) Accordingly, under *Currier*, a party who has no independent tort claims levied against him can nonetheless be liable for damages as a conspirator. (*Id.* (citing 2014 WL 4450360 at *2).)

Plaintiff argues that she has properly pled the elements of conspiracy under Article 2324 because she "identifie[d] the conspiracy, the conspirators, and the actionable element of the conspiracy – malicious prosecution. Inquiry into the complete set of facts underlying the conspiracy claim is the proper subject of discovery and a motion for summary judgment if warranted." (*Id.*) She maintains that Defendants are not entitled to dismissal at this juncture. (*Id.* at 9—10.)

With regard to her federal conspiracy claims, she asserts that "the Fifth Circuit has long "recognized that section 1983 plaintiffs may assert conspiracy claims.'" (*Id.* at 10 (citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992)).) She notes that while Defendants attacked her § 1985 conspiracy claim, they did not address her conspiracy claim under § 1983,

and accordingly, their motion, insofar as it relates to her § 1983 conspiracy claim, must be denied. (*Id.*)

### iii. Defendants' Reply (Doc. 23)

Defendants argue that Plaintiff appears to have abandoned her false arrest claims against them under state and federal law. (Doc. 23 at 1.) In any event, to the extent Plaintiff attempts to bring a claim of false arrest or conspiracy to commit false arrest, Defendants maintain that such claims have clearly prescribed. (*Id.*)

Next, Defendants reiterate that Plaintiff is unable to state a claim against Freeman and Gautreaux in their official capacity under 42 U.S.C. § 1983, and thus all claims against them in their official capacity must be dismissed. (*Id.* at 2.) Specifically, Defendants allege that Plaintiff's Section 1983 malicious prosecution and conspiracy claims against them in their official capacity cannot withstand the motion to dismiss because "Plaintiff has failed to allege or identify the necessary policy or custom that caused Plaintiff's alleged deprivation of constitutional rights. Plaintiff has also failed to allege deliberate indifference in the adoption and execution of such a policy or custom." (*Id.* (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978)); *Matthews v. Bowie County, Tex.*, 600 Fed. Appx. 933, 934 (5th Cir. 2015)).)

Additionally, Defendants maintain that Plaintiff is unable to state a conspiracy claim against Freeman in her individual capacity under state or federal law. (*Id.* at 2—3.) They contend that a crucial element to succeed on a conspiracy under federal law requires sufficient facts to demonstrate that (1) there was an agreement to commit an illegal act; and (2) that Plaintiff suffered an actual constitutional deprivation. (*Id.* at 3 (citing *Donley v. Hudson's Salvage, LLC*, No. 10-3223, 2011 WL 5930473 at *22 (E.D. La. Nov. 29, 2011) (Wilkinson, J.) (citing,

*Washington v. State of La.,* No. 04–2314, 2005 WL 711598, at *4 (E.D.La. Mar.22, 2005) (Barbier, J.) (internal citations omitted))).) Here, Defendants maintain that Plaintiff has not alleged facts beyond a conclusory level, which they insist is insufficient to support her federal conspiracy claim. Specifically, Defendants cite Plaintiff's allegation that Freeman arrested her based upon unverifiable allegations, which Freeman should have known were false, "in accordance with the wishes of the complaining witnesses Douglas and Rojas" and without doing her due diligence. (*Id.* at 3—4 (citing Doc. 1-1 at 10).) Simply stated, this is not a conspiratorial agreement. (*Id.* at 4.)

Defendants also insist that Plaintiff has failed to state a claim of malicious prosecution under both federal and state law. (*Id.*) They allege that "[t]he complaint appears void of any reasonable suggestion that there was conduct subsequent to the lodging of those criminal charges that 'set in force events' that 'ran afoul' of explicit constitutional protections as recognized by *Albright v. Olivier* and its progeny." (*Id.* (citing *Golden v. Columbia Cas. Co.*, 13-547, 2015 WL 3650761 at *28 (M.D. La. June 11, 2015) (citing *Castellano v. Fragozo*, 352 F.3d 939, 942 (5th Cir. 2003)).)

With regard to her state law malicious prosecution claim, Defendants concede that *Lemoine* is controlling and that a dismissal of charges is generally considered a bona fide termination of the criminal action in Plaintiff's favor for purposes of a malicious prosecution cause of action. (*Id.* at 5.) However, they argue that Louisiana courts recognize exceptions to this general rule. (*Id.* (citing *Lemoine*, 168 So. 3d at 364 ("A dismissal… constitute[s] a bona fide termination in favor of the malicious prosecution plaintiff unless the charge is dismissed pursuant to an agreement of compromise, because of misconduct on the part of the accused or in his behalf for the purpose of preventing trial, out of mercy requested or accepted by the accused,

because new proceedings for the same offense have been instituted and have not been terminated favorably to the accused, or when the dismissal is due to the impossibility or impracticality of bringing the accused to trial.") Defendants argue that Plaintiff has failed to allege sufficient facts for the Court to conclude that the dismissal of the charges against her constituted a bona fide termination of the litigation in her favor; for example, Plaintiff failed to allege that the dismissal amounted to a nolle prosequi. (*Id.*) Without more information, Defendants argue the Court is unable to glean whether the dismissal of her charges actually constituted a bona fide termination in her favor or whether it fell into one of the exceptions to the general rule laid out by *Lemoine*. (*Id.*) Accordingly, Defendants insist that Plaintiff failed to raise a right to relief above the speculative level in connection with her state law malicious prosecution claim. (*Id.*)

### c. Analysis

#### i. Malicious Prosecution

##### 1. Malicious Prosecution Under Federal Law

Section 1983 is not a source of substantive rights; it simply provides a vehicle for vindicating federal rights secured elsewhere. *Albright v. Oliver*, 510 U.S. 266, 270 (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Thus, in any Section 1983 action, "[t]he first step… is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Baker*, 443 U.S. at 140). There is no freestanding constitutional right to be free from malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942, 945 (5th Cir. 2003) (" 'malicious prosecution' standing alone is no violation of the United States Constitution[;]… to proceed under [Section 1983] such a claim must rest upon a denial of rights secured under federal and not state law."). A claim for malicious prosecution brought under Section 1983 must be judged against the strictures of the Fourth Amendment. *Albright*,

510 U.S. at 270. Courts tasked with evaluating a malicious prosecution claim under Section 1983 "must insist on clarity in the identity of the constitutional violations asserted" so as to avoid the adjudication  of claims that are "embedded, but float unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution." *Castellano*, 352 F.3d at 945.

At the heart of a federal claim of malicious prosecution brought under Section 1983 is the "initiation of charges without probable cause". *Id.* (citation omitted). It "occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted." *Id.* (citing Fowler V. Harper et al., The Law of Torts § 4.1 (3d ed.1996)).

The Fifth Circuit has also described the claim for malicious prosecution as not "independently cognizable" under § 1983. *Deville v. Marcantel,* 567 F.3d 156, 169–70 (5th Cir. 2009); *Golden v. Columbia Cas. Co.*, 2015 WL 3650761 at *28 (M.D. La. June 11, 2015) (citing *Deville*). Instead, the court has explained:

> it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the ... Fourth Amendment if the accused is seized and arrested ... or other constitutionally secured rights if a case is further pursued." *However, these* "*are not claims for malicious prosecution.*" Accordingly, plaintiffs' claim under § 1983 for "malicious prosecution" in respect to the May 2006 arrest is not independently cognizable[.]

*Deville*, 567 F.3d at 169 (citations omitted) (emphasis added).

Analyzing the facts of this case under the standard promulgated by *Albright*, *Castellano*, and *Deville*, it is clear that Defendants are entitled to dismissal of Plaintiff's malicious prosecution claim under Section 1983. To prevail on her claim, Plaintiff must allege a specific constitutional violation that Defendants caused. Here, even construing the facts in a light most

favorable to Plaintiff, she has alleged only that she was arrested without probable cause. (*See* Doc. 1-2 at 10.) Although Plaintiff asserts in her opposition that she "state[d] specific violations of federal law, including the Fourth Amendment and the Fourteenth Amendment's guarantee of procedural – not substantive – due process" (Doc. 21 at 6), the allegations in her petition are not as clear or concise as she characterizes them in her opposition. As articulated by *Deville* and *Castellano,* this is a claim for a violation of a constitutional right, but this is not a claim for malicious prosecution. Accordingly, Plaintiff's claim for malicious prosecution under § 1983 is dismissed without prejudice, and she will be granted leave to amend her complaint to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 15(a) (the Court should freely grant leave to amend when justice so requires); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 386—87 (5th Cir. 2003).

With regard to Gautreaux's liability under a theory of respondeat superior, "[i]t is well established that 'Section 1983 offers no respondeat superior liability.'" *Donley v. Hudson's Salvage, LLC*, 2011 WL 5930473 at *17 (E.D.La. Nov. 29, 2011), *aff'd sub nom. Donley v. Hudsons Salvage, LLC*, 517 F. App'x 216 (5th Cir. 2013) (citing *Pineda v. City of Houston,* 291 F.3d 325, 328 (5th Cir. 2002); *accord Connick v. Thompson,* 563 U.S. 51, 60 (2011)). In the absence of respondeat superior liability, municipalities and government officials may face liability under Section 1983 only where the "execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or acts may fairly be said to represent official policy, inflicts the injury." *Pineda*, 291 F.3d at 328 (citing *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978)).

In this case, even assuming Plaintiff is able to amend her complaint to state a cognizable claim under Section 1983 for a "malicious prosecution-like" cause of action, such liability cannot be extended to Gautreaux in the absence of a showing that Freeman's actions were consistent with the East Baton Rouge Parish Sheriff Office's policy or custom to maliciously prosecute private citizens. Because Plaintiff has not made (and cannot in good faith make) such a claim, any Section 1983 claim against Sheriff Gautreaux must necessarily be dismissed with prejudice.

## 2. Malicious Prosecution Under State Law

Under Louisiana law, malicious prosecution is the wrongful institution or continuation of a criminal or civil proceeding. *Keppard v. AFC Enterprises, Inc.*, 2000-2474 (La. App. 4 Cir. 11/28/01), 802 So. 2d 959, 965; *Shepherd v. Williams,* 2000-01506 (La. App. 3 Cir. 2/28/01), 780 So.2d 633, 637—38 (quoting Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law, Section 2-6(d) at 31 (1996)); *see also Hoffman v. Bailey*, 13-5153, 2017 WL 1505920 at *6 (E.D. La. Apr. 26, 2017). To prevail on a claim of malicious prosecution, the plaintiff must prove: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) a bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such a proceeding; (5) the presence of malice; and (6) damage conforming to legal standards resulting to the plaintiff. *Miller v. East Baton Rouge Parish Sheriff's Department*, 511 So. 2d 446, 453 (La. 1987); *see also Keppard*, 802 So. 2d at 965; *Kelly v. West Cash & Carry Building Materials Store*, 99-0102 (La. App. 4 Cir. 10/20/99), 745 So. 2d 743, 761; *Bailey*, 2017 WL 1505920, at *6; *Atkins v. Se. Cmty. Health Sys.*, 11-0047, 2015 WL 9307269 at *4 (M.D. La. Dec. 21, 2015).

While a cause of action malicious prosecution flows from the "fault-reparation principles of [La. Civ. Code] art. 2315, [the Louisiana Supreme Court] has imported certain restrictions and guidelines from the common law in defining the contours of the tort." *Lemoine*, 168 So. 3d at 367 (citing *Jones v. Solieau*, 448 So. 2d 1268, 1271 (La. 1984)(internal citation omitted)). As the *Lemoine* court explained,

> [t]he limitations on the tort imposed by these restrictions reflect a careful balance between two important societal interests: the right of all persons to resort to the courts for redress of wrongs and to be protected when acting in good faith on reasonable grounds in commencing either a civil or criminal proceeding, and the right of an individual to seek redress for the malicious and unwarranted employment of the judicial process against him.

*Id.*. Further,

> [a] dismissal of a criminal prosecution pursuant to [La. Civ. Code Crim. Proc.] art. 691 will constitute a bona fide termination in favor of the malicious prosecution plaintiff unless the charge is dismissed pursuant to an agreement of compromise, because of misconduct on the part of the accused or in his behalf for the purpose of preventing trial, out of mercy requested or accepted by the accused, because new proceedings for the same offense have been instituted and have not been terminated favorably to the accused, or when the dismissal is due to the impossibility or impracticality of bringing the accused to trial.

*Id.* at 364. A malicious prosecution plaintiff need not allege the district attorney's reasons for dismissal or the entering of a *nolle prosequi*, so long as it is clear from the complaint that the dismissal is "consistent with a conclusion that there was a lack of reasonable grounds for pursuing the criminal prosecution." *Lemoine*, 168 So. 3d at 373 n.19 (citing *LeBlanc v. Pynes,* 46,393 (La. App. 2 Cir. 7/13/11), 69 So. 3d 1273, 1282).

In this case, Defendants insist that Plaintiff's state law claim of malicious prosecution must be dismissed because she failed to allege sufficient facts beyond a conclusory level that would allow the Court to infer that the termination of the criminal proceeding against her was a bona fide termination in her favor or that it constituted a *nolle prosequi*. The Court must accept

all well-pleaded facts as true and construe the allegations contained in the complaint in the light most favorable to Plaintiff. Under the circumstances of this case, the Court does not find Defendants are entitled to dismissal of Plaintiff's state law malicious prosecution claim. While Plaintiff has not yet come forth with evidence supporting her assertion that the criminal prosecution resulted in a bona fide termination in her favor, the parties will have the opportunity to do discovery on this issue. Under a totality of the circumstances, including the Power of Attorney forms that Garside signed on two occasions (Doc. 1-2 at 8), and Plaintiff's communications with various Baton Rouge organizations that serve the elderly and those suffering from dementia, the Court can reasonably infer that the district attorney's dismissal of the charges against Plaintiff was "consistent with a conclusion that there was a lack of reasonable grounds for pursuing the criminal prosecution." *Lemoine*, 168 So. 3d at 373 n.19 (citation omitted). If, in due course, documents obtained in discovery reveal that the converse is true, Defendants will have an opportunity to raise the issue in a summary judgment motion. However, dismissal on a 12(b)(6) motion is not the proper vehicle to dispose of Plaintiff's claim.[2]

**Conspiracy to Commit Malicious Prosecution**

### 3. Federal Conspiratorial Liability Under §§ 1983 and 1985

#### a. Section 1983

To succeed on a claim of conspiracy under § 1983, a plaintiff must show: (1) "an agreement between private and public defendants to commit an illegal act," and (2) "an actual deprivation of constitutional rights." *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994) (citing

---

[2] With regard to Gautreaux's liability via the doctrine of respondeat superior, codified in La. Civ. Code art. 2320, Defendants have not addressed this issue aside from their argument that Plaintiff has failed to state a claim of state law malicious prosecution against Freeman, and thus necessarily failed to state a claim against Gautreaux. (*See* Docs. 16-1 at 13—14, 23 at 5.) Plaintiff has not provided any jurisprudential or statutory support for her argument that Gautreaux should be held vicariously liable. Accordingly, the issue is not properly before the Court and the Court declines to decide the issue of Gautreaux's vicarious liability for Plaintiff's state law malicious prosecution claim at this juncture.

*Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984)); *see also McCoy v. Hous. Auth. of New Orleans*, 15-398, 2016 WL 4592162, at *15 (E.D. La. Sept. 2, 2016)(quoting *Cinel*). "[M]ore than a blanket of accusation is necessary to support a § 1983 claim." *Arsenaux*, 726 F.2d at 1024 (citing *Aldabe v. Aldabe,* 616 F.2d at 1092; *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977); *see also Cole v. Gray,* 638 F.2d 804, 811 (5th Cir.), *cert. denied,* 454 U.S. 838 (1981); *Newbold v. United States Postal Service,* 614 F.2d 46, 47 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 878 (1980)).

Viewing the allegations in the petition in the light most favorable to Plaintiff, it is clear that she has set forth nothing more than "a blanket of accusations" relating to her claims arising out of an alleged conspiracy between Freeman, Rojas, and Douglas. She alleges that Freeman arrested her and charged her with various state law violations "[i]n accordance with the false and unverifiable allegations made by Douglas and Rojas – allegations that Douglas, Rojas, and Freeman knew or should have known were false[.]" (Doc. 1-2 at 10.) At best, Plaintiff has raised an inference that Freeman was negligent in her investigation of Douglas's and Rojas's claims. The facts that she has set forth do not even create an inference than Freeman was involved in an alleged conspiracy; insofar as the Court can deduce, it appears she was the officer who responded to Douglas's and Rojas's complaints, and did so without conducting sufficient due diligence. This, without more, cannot support a claim of conspiracy under Section 1983.

Accordingly, Defendants are entitled to dismissal of this claim, unless Plaintiff is able to come forward with specific factual allegations in an amended complaint that would allow the Court to draw an inference that Freeman actively engaged in conspiratorial behavior to maliciously prosecute Plaintiff. Moreover, even assuming Plaintiff is able to amend her complaint to state a valid conspiracy claim under Section 1983 against Freeman, for the reasons

discussed above, there is no respondeat superior liability under Section 1983. Thus, any claim Plaintiff purports to raise against Gautreaux for Freeman's actions is not cognizable and is dismissed with prejudice.

### b. Section 1985

Section 1985(3) prohibits a conspiracy "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985. To prevail on a claim under Section 1985(3), a plaintiff must establish the following: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bd. of Carpenters & Joiners v. Scott*, 463 U.S. 825 (1983); *see also McLin v. Ard*, 13-538, 2016 WL 482046 at *3 (M.D. La. Feb. 5, 2016)(citing *Vakilian*); *Oliver v. Prator*, 438 F. Supp. 2d 676, 679 (W.D. La. 2006)(citing *Vakilian*). Moreover, the Fifth Circuit has unambiguously held that "[i]n this circuit, we require an allegation of a race-based conspiracy to present a claim under § 1985(3)." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2003) (internal quotation marks and citation omitted); *see also McLin*, 2016 WL 482046 at *3 (quoting *Horaist*); *see also Griffin v. Breckenridge*, 403 U.S. 88, 102 ("The language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."); *Prator*, 439 F. Supp. 2d at 679 (quoting *Breckenridge*).

In this case, Plaintiff has not alleged that Freeman, Douglas, and Rojas engaged in a conspiracy to maliciously prosecute her based upon her race. Because Plaintiff has failed to allege a conspiracy based on discriminatory animus, the Court finds that Defendants are entitled to relief on this claim and that Plaintiff's Section 1985 claim is dismissed with prejudice.

### 4. State Conspiratorial Liability

Plaintiff has also alleged that Defendants are liable under Louisiana law for the conspiracy to commit malicious prosecution. Louisiana Civil Code Article 2324 provides that "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." As the Louisiana Supreme Court has explained, Article 2324 "does not by itself impose liability for a civil conspiracy," for "'[t]he actionable element in a claim under this Article is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part.'" *Ross v. Conoco, Inc.,* 828 So. 2d 546, 552 (La. 2002)(quoting *Butz v. Lynch*, 97-2166 (La. App. 1 Cir. 4/8/98) 710 So. 2d 1171, 1174, *writ denied*, 98-1247 (La. 6/19/98), 721 So. 2d 473); *see also Currier v. Entergy Servs., Inc.*, 11-2208, 2014 WL 4450360, at *2 (E.D. La. Sept. 10, 2014). Thus, "[i]n order to recover under this theory of liability, a plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in the plaintiff's injury… The plaintiff must establish that there was an agreement as to the intended outcome or result." *Butz*, 97-2166 at *6, 710 So. 2d at 1174 (citing *Silver v. Nelson*, 610 F. Supp. 505, 516—17 (E.D.La. 1985); *Walker v. American Honda Motor Co., Inc.,* 93–1659, p. 6 (La. App. 3 Cir. 6/1/94); 640 So. 2d 794, 797, *writ denied,* 94–1741 (La.10/7/94); 644 So.2d 644).

In this case, for the same reasons discussed above in connection with Plaintiff's claim of conspiratorial liability under Section 1983, Plaintiff has failed to allege sufficient facts to give

rise to an inference "that there was an agreement as to the intended outcome or result." *Id.* Accordingly, Defendants are entitled to dismissal of Plaintiff's state law conspiracy claim. However, Plaintiff shall be granted leave to amend to allege sufficient facts to demonstrate to the Court that an agreement existed between Freeman, Douglas, and Rojas to maliciously prosecute her.

### ii. False Arrest

Despite Defendants' insistence that they are entitled to dismissal of Plaintiff's false arrest claim, Plaintiff maintains that she has not raised a claim for false arrest. (Doc. 21 at 7.) Accordingly, the issue is not properly before the Court and the Court need not rule on the viability of Plaintiff's nonexistent false arrest claim.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 16) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendants' Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's conspiracy claims under 42 U.S.C. § 1985. This claim shall be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Defendants' Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's claims against Freeman for malicious prosecution and conspiracy to commit malicious prosecution under 42 U.S.C. § 1983. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** and Plaintiff shall be given thirty (30) days from the issuance of this Ruling to amend her complaint to state a cognizable claim under § 1983.

**IT IS FURTHER ORDERED** that Defendants' Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's claims against Gautreaux in his individual and official capacities and under a theory of respondeat superior for malicious prosecution and conspiracy to commit malicious prosecution under 42 U.S.C. § 1983. Plaintiff's claims against Gautreaux are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion is **DENIED** to the extent it seeks dismissal of Plaintiff's claim of malicious prosecution under Louisiana law.

**IT IS FURTHER ORDERED** that Defendants' Motion is **GRANTED** insofar as it seeks dismissal of Plaintiff's claim of conspiracy to commit malicious prosecution under Louisiana law. Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE** and Plaintiff shall be given thirty (30) days from the issuance of this Ruling to amend her complaint to state such claim.

**IT IS SO ORDERED**.

Signed in Baton Rouge, Louisiana, on <u>May 22, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**